FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 23, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JASON L.,[1]<br><br>     Plaintiff,<br><br>  v.<br><br>ANDREW M. SAUL, the Commissioner of Social Security,<br><br>     Defendant. | No. 4:20-CV-5017-EFS<br><br><br>**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION** |

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Jason L. appeals the denial of benefits by the Administrative Law Judge (ALJ). He alleges the ALJ erred by 1) improperly weighing the medical opinions, 2) discounting Plaintiff's symptom reports, 3) failing to properly consider lay statements, 4) improperly determining that the impairments did not meet or equal

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to him by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 11 & 12.

Listings 12.04, 12.06, and 12.15, and 5) improperly assessing Plaintiff's residual functional capacity and therefore relying on an incomplete hypothetical at step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court grants Plaintiff's Motion for Summary Judgment, ECF No. 11, and denies the Commissioner's Motion for Summary Judgment, ECF No. 12.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether an adult claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical

---

[3] 20 C.F.R. § 416.920(a).

[4] *Id.* § 416.920(a)(4)(i).

[5] *Id.* § 416.920(b).

[6] *Id.*

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 2

or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

Step three compares the claimant's impairment(s) to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national

---

[7] 20 C.F.R. § 416.920(a)(4)(ii).

[8] *Id.* § 416.920(c).

[9] *Id.*

[10] *Id.* § 416.920(a)(4)(iii).

[11] *Id.* § 416.920(d).

[12] *Id.* § 416.920(a)(4)(iv).

[13] *Id.*

economy—considering the claimant's RFC, age, education, and work experience.[14]
If so, benefits are denied. If not, benefits are granted.[15]

The claimant has the initial burden of establishing entitlement to disability
benefits under steps one through four.[16] At step five, the burden shifts to the
Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed a Title XVI application, alleging a disability onset date of
February 7, 2008.[18] His claim was denied initially and upon reconsideration.[19] A
video administrative hearing was held before Administrative Law Judge Jesse
Shumway.[20]

In denying Plaintiff's disability claim, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity
  since January 28, 2016, the application date;

---

[14] 20 C.F.R. § 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir.
1984).

[15] 20 C.F.R. § 416.920(g).

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 75.

[19] AR 74-86 & 106.

[20] AR 36-60.

- Step two: Plaintiff had the following medically determinable severe impairments: lumbar disc degenerative disc disease, obesity, hypertension, posttraumatic stress disorder (PTSD), and persistent depressive disorder;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform light work with the following limitations:

  > [H]e cannot climb ladders, ropes, or scaffolds, and can perform all other postural activities only occasionally; he cannot have concentrated exposure to vibration or hazards (e.g., unprotected heights, moving mechanical parts); he is limited to unskilled and semi-skilled work; he can have no contact with the general public and only superficial contact with coworkers and supervisors, with no collaborative tasks; and he is likely to be off task 5-10% of the workday.

- Step four: Plaintiff was not capable of performing past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as mail sorter; marker, retail; and router.[21]

---

[21] AR 17-24.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

When assessing the medical-opinion evidence, the ALJ gave:

- great weight to the opinions of the State agency medical consultants' assessments;

- significant weight to the examining opinions of Janet Strode, ARNP and Joseph Poston, ARNP and

- little weight to the treating opinion of Steve Peters, MS, MHP, LCMHCA and examining opinions of Thomas Genthe, Ph.D. and Caleb Garfield, ARNP-C.[22]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23] Likewise, the ALJ discounted the lay statements from Plaintiff's mother.[24]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[25] Plaintiff timely appealed to this Court.

---

[22] AR 22-23.

[23] AR 20-22.

[24] AR 23.

[25] AR 1.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

1

2

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[26] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[27] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[29] The Court considers the entire record as a whole.[30]

---

[26] 42 U.S.C. § 405(g).

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[28] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[29] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[30] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

Further, the Court may not reverse an ALJ decision due to a harmless error.[31] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[32] The party appealing the ALJ's decision generally bears the burden of establishing harm.[33]

## IV.    Analysis

## A.    Medical Opinions: Plaintiff establishes consequential error.

Plaintiff challenges the ALJ's assignment of little weight to Mr. Peters' treating opinion and Dr. Genthe's examining opinion. The Court agrees the ALJ's reasons for discounting these medical opinions are not meaningfully explained with adequate reasons supported by substantial evidence.

### 1.    Standard

The weighing of medical opinions is dependent upon the nature of the medical relationship, i.e., 1) a treating physician, 2) an examining physician who examines but did not treat the claimant, and 3) a reviewing physician who neither treated nor examined the claimant.[34] Generally, more weight is given to the opinion of a treating physician than to an examining physician's opinion and both

---

[31] *Molina*, 674 F.3d at 1111.

[32] *Id.* at 1115 (quotation and citation omitted).

[33] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

[34] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

treating and examining opinions are to be given more weight than the opinion of a reviewing physician.[35]

When a treating physician's or evaluating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and when it is contradicted, it may be rejected for "specific and legitimate reasons" supported by substantial evidence.[36] A reviewing physician's opinion may be rejected for specific and legitimate reasons supported by substantial evidence, and the opinion of an "other" medical source[37] may be rejected for specific and germane reasons supported by substantial evidence.[38] The opinion of a reviewing physician serves as substantial evidence if it is supported by other independent evidence in the record.[39]

---

[35] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[36] *Lester*, 81 F.3d at 830.

[37] *See* 20 C.F.R. § 404.1502 (For claims filed before March 27, 2017, acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants within their scope of practice—all other medical providers are "other" medical sources.).

[38] *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009).

[39] *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

2.    Mr. Peters

Mr. Peters held therapy sessions generally once or twice a month beginning in March 2016.[40] In July and August 2018, Mr. Peters completed a Mental Residual Functional Capacity Assessment and an Assessment Summary for social-security purposes.[41] In July 2018, he opined that Plaintiff was:

- markedly limited in his abilities to ask simple questions or request assistance; remember locations and work-life procedures; understand and remember short and simple instructions; understand and remember detailed instructions; carry out very short simple instructions; carry out detailed instructions, maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; make simple work-related decisions; interact appropriately with the general public; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others; and

- severely limited in his abilities to sustain an ordinary routine without special supervision; work in coordination with or proximity to others

---

[40] *See e.g.,* AR 465-72, 503-11, 679-80, & 687-740.

[41] AR 512-17 & 783-88.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

without being distracted by them; complete a normal workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and travel in unfamiliar places or use public transportation.

As to B Criteria of mental listings, Mr. Peters opined that Plaintiff was markedly limited in understanding remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. Mr. Peters opined that Plaintiff would be off task more than thirty percent of the workweek and he would miss four or more day per month.[42] In August 2018, Mr. Peters opined similar limitations.[43]

The ALJ gave little weight to Mr. Peters' non-acceptable medical-source opinion on the grounds that his opinion 1) was comprised of a checkbox form without "adequate objective explanation or citation to objective evidence," 2) contrasted with normal mental status exams, and 3) the accompanying letter, which "rel[ied] nearly exclusively on [Plaintiff's] subjective complaints," contrasted

---

[42] AR 783-88.

[43] AR 512-17.

with Mr. Peters' treatment notes and Plaintiff's daily activities. The ALJ was to consider Mr. Peters' opinion when assessing the severity of Plaintiff's impairments and how they affected his ability to work, and then offer specific and germane reasons for discounting the opinion.

First, the Ninth Circuit has recognized a preference for individualized medical opinions over check-box forms; however, when the opinion expressed in the check-box form is based on significant experience with a claimant and supported by numerous records, it is entitled to more weight than an otherwise unsupported and unexplained check-box form.[44]

Here, the record shows that Mr. Peters began treating Plaintiff in March 2016, seeing Plaintiff 1-2 times per month for individual counseling sessions.[45] These visits revealed Plaintiff needed help processing his thoughts and emotions and tools to manage challenging situations related to past trauma.[46] For example, Mr. Peters discussed different coping skills – using an organized check-list, calculator to keep track of spending, and taking a friend – to reduce Plaintiff's anxiety when grocery shopping.[47] The ALJ failed to address the fact that Mr.

---

[44] *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983); *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014).

[45] AR 465-72, 503-11, 679-80, & 687-740.

[46] *Id.*

[47] AR 507.

Peters was Plaintiff's mental health therapist and rejected his opinion simply because of the check-box form and was a non-acceptable medical source.

Second, the ALJ's finding that Mr. Peters' opinion was inconsistent with the objective findings, i.e., Plaintiff's mental status examinations, is not, on this record, a meaningfully explained germane reason supported by substantial evidence. The ALJ fails to explain how Mr. Peters' opined limitations were inconsistent with the mental status examinations in the record. For instance, multiple treatment notes and mental status examinations discussed Plaintiff's anxiety, depression, and agitation.[48]

Here, the ALJ cited to several medical records: some pertaining to medical visits for physical conditions, medication management, and psychiatric treatment

---

[48] AR 387 (mood somewhat anxious); AR 428, 434, 438, & 442 (anxious, inappropriate mood and affect, depressed, pressured speech); AR 500 (positive for depression, feeling down, anxiety); AR 504 (processing thoughts and emotions regarding PTSD and depressive symptoms); AR 507 (discussed techniques to help reduce anxiety and stress); AR 535 (anxious, nightmares, oriented to time, place, person, and situation, no agitation, appropriate mood and affect); AR 601 (anxious, inappropriate mood and affect – depressed, oriented to time, place, person and situation); AR 613 (anxious, pressured speech, oriented to time, place, person and situation, appropriate mood and affect); & AR 630 (mood anxious, affect full).

notes. While the ALJ cites to a handful of treatment notes that showed appropriate mood and affect, those are from times when Plaintiff was being seen for his physical impairments (hypertension, back pain, and GERD).[49] On this record there are numerous treatment notes related to psychiatric appointments and follow-up appointments for depression and anxiety which reflected that Plaintiff had difficulty leaving his house – many of which are not discussed in the ALJ's decision.[50] Without a more meaningful explanation, that Plaintiff presented with normal mental examinations, is not a germane reason on this record to discount Mr. Peters' opined limitations given the observed depression, anxiety, and agitation.[51]

Third, the ALJ rejected Mr. Peters' opinion because he regarded it as inconsistent with the treatment notes. A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the

---

[49] AR 489-96, 521-29, 558-597, & 604-09.

[50] AR 465-72, 497-511, 616-622, 626-631, & 675-742.

[51] *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (requiring the ALJ to identify the evidence supporting the found conflict to permit the Court to meaningfully review the ALJ's finding); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

opinions of a treating physician or another treating provider.[52] Here, Mr. Peters'

treatment notes consistently reflect the need for help processing thoughts and

emotions regarding his anxiety, PTSD, and depressive symptoms.[53] It is true that

the notes also record some improvement with the management of Plaintiff's PTSD

and depression symptoms, but such observations must be "read in context of the

overall diagnostic picture" the provider draws.[54] The fact that a person suffering

from PTSD, anxiety, and depression makes some improvement "does not mean that

the person's impairment [ ] no longer seriously affect[s] [his] ability to function in a

workplace."[55]

Furthermore, the ALJ's proffered reason that Mr. Peters' opinion was

inconsistent with Plaintiff's daily activities is also legally insufficient. An ALJ may

discount a medical opinion that is inconsistent with the claimant's level of activity

yet "many home activities are not easily transferable to what may be the more

---

[52] *Molina*, 674 F.3d at 1111-12 (recognizing that a conflict with treatment notes is a

germane reason to reject a treating physician's assistant's opinion).

[53] *See* AR 466-72, 471-72, 503-11, & 707-16.

[54] *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001; *cf. Lester v. Chater*,

81 F.3d 821, 833 (9th Cir. 1995) ("Occasional symptom-free periods . . . are not

inconsistent with disability."); *see* AR 679-98.

[55] *Holohan*, 246 F.3d at 1205; *see also Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194,

1200-01 (9th Cir. 2008).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 15

grueling environment of the workplace."[56] Here, the ALJ highlighted that Plaintiff "is able to maintain his own personal care, clean the kitchen and bathroom, does laundry, goes out alone, rides the bus, and goes to church an[d] social groups regularly."[57] The ALJ also highlighted that Plaintiff likes lifting weights, fishing, reading, barbecuing, and spending time with family and friends. The ALJ also highlighted that Plaintiff was thinking about attending college.[58] While these hobbies and activities include interacting with other people (mostly people Plaintiff is familiar with), the ALJ did not identify how these hobbies and activities, which can be done intermittently and on sporadic basis, are inconsistent with Plaintiff's anxiety attacks and PTSD when trying to leave home. Furthermore, there is no evidence of the last time Plaintiff was able to complete any of the activities he likes nor take any steps to be able to attend college. Accordingly, on this record, the ALJ's finding that Mr. Peters' opinion was inconsistent with Plaintiff's activities is not supported by substantial evidence.

Lastly, "[a] physician's opinion of disability premised to a large extent upon the claimant's own account of his symptoms and limitations may be disregarded

---

[56] *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[57] AR 19 (citing AR 244-51) (Plaintiff's mother's Function Report).

[58] AR 19 & 21.

where those complaints have been properly discounted."[59] Here, the ALJ has not

explained how the accompanying letters "nearly exclusively" rely on Plaintiff's

subjective complaints.[60] While Mr. Peters referenced multiple reported symptoms

by Plaintiff, Mr. Peters had been treating Plaintiff 1-2 times a month for more than

2 years when he completed the Mental Residual Functional Capacity Assessment

and accompanying letter. Thus, without a more meaningful explanation that Mr.

Peters "nearly exclusively" relied on Plaintiff's subjective reports, rather than Mr.

Peters' observations or findings during those two years, it is not a germane reason

to discount Mr. Peters limitations given the extent of Mr. Peters and Plaintiff's

treating relationship. "[T]he report of a [therapist] should not be rejected simply

because of the relative imprecision of the psychiatric methodology."[61] "Psychiatric

evaluations may appear subjective, especially compared to evaluation in other

medical fields."[62] "Diagnoses will always depend in part on the patient's self-report,

as well as on the clinician's observations of the patient. But such is the nature of

psychiatry. Thus, the rule allowing an ALJ to reject opinions based on self-reports

---

[59] *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)).

[60] AR 22.

[61] *Buck*, 869 F.3d at 1049 (internal citation removed) (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)).

[62] *Buck*, 869 F.3d at 1049.

does not apply in the same manner to opinions regarding mental illnesses."[63] Therefore, this is not a germane reason supported by substantial evidence to discount Mr. Peters' opined limitations.

        3.   <u>Dr. Genthe</u>

      On February 12, 2016, Dr. Thomas Genthe conducted a psychological evaluation of Plaintiff, including a mental status examination.[64] Dr. Genthe diagnosed Plaintiff with PTSD and other specified schizophrenia spectrum disorder. Dr. Genthe opined that Plaintiff was markedly limited in communicating and performing effectively in a work setting, maintaining appropriate behavior in a work setting, and completing a normal workday and work week without interruptions from psychologically based symptoms; and moderately limited in understanding, remembering, and persisting in tasks by following detailed instructions, adapting to changes in a routine work setting, and setting realistic goals and planning independently. Dr. Genthe opined that Plaintiff's prognosis was fair and would improve within six months with individual counseling.[65]

---

[63] *Id.* (internal citations omitted).

[64] AR 544-50.

[65] Neither the ALJ nor the parties discussed the duration of Dr. Genthe's opined limitations. RULE. However, Plaintiff received individual counseling during the subsequent months after Dr. Genthe's assessment and still was limited as opined by Mr. Peters. The Court is unable to meaningfully review the ALJ's findings related to

The ALJ gave little weight to Dr. Genthe's opinion for the same reasons he discounted Mr. Peters' opinion – inadequate objective explanation or citation to objective evidence, inconsistent with records showing normal mental status exams, and inconsistent with Plaintiff's daily activity level.

First, as to the ALJ's finding that Dr. Genthe's check-box opinion was inconsistent with the objective medical evidence, the ALJ did not offer meaningful analysis to support this decision, but rather cited to the same medical records for which he discounted Mr. Peters' opinion, which were largely medical records from appointments treating Plaintiff's physical conditions.

Here, Dr. Genthe's opinion consisted of a check-box form, with a clinical interview with Plaintiff and a summary explaining Plaintiff's limitations, the extent of the limitations, and why the limitations could be managed within six months if treated, followed by a mental status exam and psychometric assessment results.[66] The ALJ failed to address how this was an "[in]adequate objective explanation" in support of Dr. Genthe's opinion.[67] This fails to meet the specific and legitimate standard.

_____

Mr. Peters' and Dr. Genthe's opinions without more explanation, thus, the errors in weighting Dr. Genthe's opinion are consequential.

[66] AR 544-50.

[67] AR 22.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Second, the ALJ's finding that Dr. Genthe's opinion was inconsistent with Plaintiff's mental status examinations, is not, on this record, a meaningfully explained legitimate reason supported by substantial evidence. The ALJ fails to explain how Dr. Genthe's assessed marked and moderate limitations (with the remaining limitations being "none or mild") were inconsistent with the other mental status examinations in the record. During his physical examination, Dr. Genthe observed that Plaintiff had deficits in speech, memory, attention, and concentration.[68] As previously explained, while the ALJ cites to a handful of treatment notes that show normal mood and affect, those are from when Plaintiff was being seen for his physical impairments. There are many treatment notes related to psychiatric appointments discussing the limiting symptoms resulting from Plaintiff's depression, anxiety, and PTSD, many of which are not discussed in the ALJ's decision.[69] Without a more meaningful explanation, that Plaintiff presented with normal mental examinations during the cited appointments, is a not a legitimate reason to discount Dr. Genthe's opinioned limitations given the observed deficits in speech, memory, attention, and concentration.

Finally, the ALJ discounted Dr. Genthe's opinion because it was inconsistent with Plaintiff's activities. An ALJ may discount a medical opinion that is inconsistent with the claimant's level of activity yet "many home activities are not

---

[68] AR 548-49.

[69] AR 465-72, 497-511, 616-622, 626-631, & 675-742.

easily transferable to what may be the more grueling environment of the workplace."[70] For the same reasons previously explained, on this record, the ALJ's finding that Dr. Genthe's opinion was inconsistent with Plaintiff's activities is not supported by substantial evidence.

### B.    Plaintiff's Symptom Reports: The ALJ is to reconsider on remand.

Plaintiff argues the ALJ failed to provide valid reasons for rejecting his symptom reports. Here, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms inconsistent with the medical evidence, Plaintiff's daily and social activities, Plaintiff's reported symptoms to treatment providers, and weak work history.[71]

The ALJ's evaluation of Plaintiff's symptom claims and the resulting limitations relies on the ALJ's assessment of the medical evidence. Having determined a remand is necessary to readdress the medical source opinions, a reevaluation must necessarily reassess Plaintiff's subjective symptom claims. As to Plaintiff's social interactions with family and friends, the ALJ must more meaningfully explain how such interactions are inconsistent with Plaintiff's reported anxiety and PTSD symptoms when he tries to leave home. And as to Plaintiff's work history, the ALJ is to consider whether the previous finding that

---

[70] *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

[71] AR 21-22.

Plaintiff was disabled impacted his unemployment when assessing if past unemployment could be related to factors other than Plaintiff's medical conditions. On remand, the ALJ must carefully reevaluate Plaintiff's symptom claims in the context of the entire record.[72] The ALJ must also reevaluate the lay statements of Plaintiff's mother.

**C.     Step Three (Listings): The ALJ is to reconsider on remand.**

Plaintiff argues the ALJ erred by improperly determining that Plaintiff's impairments did not meet or equal Listings 12.04, 12.06, and 12.15. Because this matter is being remanded for the ALJ's failure to adequately weigh the medical evidence, on remand the ALJ is to reconsider Plaintiff's step-three listing arguments.

**D.     Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[73] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further

---

[72] *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons state, we decline to reach [plaintiff's] alternative ground for remand.").

[73] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

proceedings" unless the record reflects that no further proceedings are necessary because there is no serious doubt that the claimant is disabled.[74]

The Court finds that further development is necessary for a proper disability determination. On remand, the ALJ is to order a psychological consultative examination. The ALJ shall then reevaluate each of the medical opinions, consider any additional evidence presented, and make findings at each of the five steps of the sequential evaluation process.

## V. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

---

[74] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 23

4.      The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and

provide copies to all counsel.

**DATED** this 23rd  day of February 2021.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge